UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

MIGUEL ROMERO,

Defendant.

---

15 Cr. 445-18 (PAE)

ORDER

PAUL A. ENGELMAYER, District Judge:

Before this Court is defendant Miguel Romero's renewed motion seeking compassionate release from Federal Correctional Institution ("FCI") Schuylkill pursuant to 18. U.S.C. § 3582(c), in light of the time he has served in custody during the COVID-19 pandemic and the risk that the pandemic presents to his health. *See* Dkt. 1171 ("Def. Mot."); Dkt. 1175 ("Def. Mem."). The Government opposes his request. *See* Dkt. 1176 ("Gov't Mem."). For the reasons that follow, the Court grants Romero's motion.

Romero was a member of the 18 Park Gang in the Bronx. *See* Dkt. 1051 ("Sent. Tr.") at 44. In 2015, Romero participated in a shooting directed at a member of the rival Square Gang. *Id.* at 45. No one was injured during the shooting. *Id.* Romero also made videos promoting his gang, which referenced selling narcotics, including cocaine. *Id.*

On December 9, 2015, Romero and 25 others were indicted for, *inter alia*, participation in a racketeering conspiracy. Dkt. 12. Romero's jury trial, with two co-defendants, began on October 31, 2016. *See* Dkt. 411. On November 21, 2016, the jury found Romero guilty of a racketeering conspiracy, 18 U.S.C. § 1962(d), narcotics conspiracy, 21 U.S.C. §§ 841(b), 846, and possession of a firearm in connection with racketeering, 18 U.S.C. § 924(c)(1)(a)(i).

Dkts. 465, 1046.  On September 3, 2019, the Court sentenced Romero to 78 months' imprisonment followed by a term of five years' supervised release.  Sent. Tr. at 53.

Romero has been incarcerated since his December 2015 arrest.  Dkt. 1104 at 2.  Taking into account the good-time credit he has earned, he is scheduled to be released on August 15, 2021.[1]  Dkt. 1181 ("Gov't Ltr.").  He has thus served 65 months of the 69 months he is projected to serve.

On May 11, 2020, two months into the COVID-19 pandemic, the Court received a *pro se* application from Romero seeking compassionate release from FCI Schuylkill.  Dkt. 1102.  On May 14, 2020, the Court denied that motion, on the ground that Romero had not demonstrated extraordinary and compelling reasons justifying early release.  Dkt. 1105 ("Op. & Order").

On February 17, 2021, some nine months later, the Court received a renewed such motion from Romero.  Romero argued there that release was merited based on his post-release plans, his rehabilitation in prison, and his pre-existing condition (obesity), which makes him high-risk for contracting COVID-19 in a highly infected prison building.  On March 22, 2021, Romero's counsel filed a memorandum of law in support.  *See* Def. Mem.  It emphasized the hazardous COVID-19 health conditions at FCI Schuylkill including in Romero's building, Romero's youth at the time of his offenses, Romero's approaching release date, and Romero's rehabilitation in prison.  *Id.* at 5–6.

On March 28, 2021, the Government opposed Romero's renewed motion.  It argued that the Court should deny the renewed motion for the same reasons it denied Romero's first motion. It notes that Romero's medical records as of 2018 indicate that he is young and healthy, with a

---

[1] Romero has lost approximately 82 days of good-time credit as a result of two disciplinary incidents, one involving possession of a hazardous tool and another involving possession of drugs or alcohol.  *See* Gov't Ltr.

BMI of 28, which does not put him at an increased risk of contracting COVID-19.  Gov't Mem.

at 2.  And, it argues, his release would be inconsistent with the factors set out in 18 U.S.C.

§ 3553(a), particularly given the seriousness of his offense.  *Id.*

> Under 18 U.S.C. § 3582(c)(1)(A), a court

> upon motion of the defendant after the defendant has fully exhausted all
> administrative rights to appeal a failure of the Bureau of Prisons to bring a motion
> on the defendant's behalf . . . may reduce the term of imprisonment . . . after
> considering the factors set forth in section 3553(a) to the extent that they are
> applicable, if it finds that— (i) extraordinary and compelling reasons warrant such
> a reduction . . . and that such a reduction is consistent with applicable policy
> statements issued by the Sentencing Commission.

The defendant bears the burden of proving that he is entitled to compassionate release under

18 U.S.C. § 3582(c).  *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the

defendant seeks decreased punishment, he or she has the burden of showing that the

circumstances warrant that decrease."); *United States v. Clarke*, No. 09 Cr. 705 (LAP),

2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010).

Originally, § 3582(c)(1)(A) did not permit prisoners to initiate compassionate release

proceedings and instead required the Bureau of Prisons ("BOP") to seek such release on their

behalf.  *United States v. Ebbers*, 432 F. Supp. 3d 421, 422–23, 427 (S.D.N.Y. 2020).  But with

the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, Congress amended the law to

allow defendants independently to seek compassionate release from federal courts.  *Ebbers*,

432 F. Supp. 3d at 422–23.

Before the First Step Act, Congress had tasked the Sentencing Commission with

identifying circumstances sufficiently extraordinary and compelling to justify a sentence

reduction.  *Id.* at 427 (citing 28 U.S.C. § 994(t)).  The Commission did so in U.S.S.G. § 1B1.13

and its corresponding commentary.  That guidance, *inter alia*, (1) sets out circumstances that

present extraordinary and compelling reasons justifying release; and (2) requires that a defendant not be a danger to the community. *Id.* § 1B1.13(1)–(3) & cmt. n.1(A)–(D).

By its terms, however, the Commission's guidance applies only to a "motion of the Director of the Bureau of Prisons." *Id.* § 1B1.13.  And the Commission has not updated § 1B1.13 or its commentary to reflect the First Step Act's amendment to § 3582(c)(1)(A) authorizing defendants to move for compassionate release on their own, without BOP intervention.  Accordingly, although courts—including this one—had treated the Commission's guidance as applicable to all compassionate release motions, *see, e.g.*, *United States v. Hernandez*, 451 F. Supp. 3d 301, 303 (S.D.N.Y. 2020); *see also Ebbers*, 432 F. Supp. 3d at 428, the Second Circuit has recently clarified that § 1B1.13 "is not 'applicable' to compassionate release motions brought by defendants," rather than by the BOP, and "cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling" in such cases.  *United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020); *see also id.* at 237 ("Neither Application Note 1(D), *nor anything else in the now-outdated version of Guideline § 1B1.13*, limits the district court's discretion." (emphasis added)).

Consistent with *Brooker*, in assessing a § 3582(c) motion brought directly by a defendant, the Court is not constrained by either § 1B1.13's enumeration of extraordinary and compelling reasons or by its freestanding requirement that the defendant seeking release not pose any danger to the community.  Rather, the Court, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," 18 U.S.C. § 3582(c)(1)(A)(i), may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." *Brooker*, 976 F.3d at 237.

In denying Romero's first application, the Court found that Romero had not shown the extraordinary and compelling circumstances necessary to justify release under § 3582(c).  *See* Op. & Order at 3.  Romero had not shown that he is more likely to contract COVID-19 than other inmates, or that he was at a heightened risk for suffering complications were he to contract the virus.  *Id.*  Although Romero argued that the COVID-19 pandemic caused him anxiety, he did not identify any underlying health condition that increased his susceptibility to COVID-19.

Romero's renewed application for release attempts to fill those voids.  He states that he suffers from obesity,[2] *see* Def. Mot. at 2, placing him at a heightened risk from COVID-19. And, he states, his vulnerability is heightened because the virus is widespread in the building in which he is housed, where 60 of the 120 inmates are infected.  *Id.*

In many prior cases, the Court's determination whether to grant a compassionate release motion has turned on an inmate's heightened vulnerability to the pandemic.  The Court has granted such applications where a defendant had demonstrated heightened vulnerability to the virus and had served a sufficient amount of his assigned sentence to make the requested early release consistent with the § 3553(a) factors.[3]  At the same time, the Court has denied such

---

[2] In response, the Government notes that Romero's 2018 medical records reported a BMI that was not consistent with obesity.  But, it notes, Romero's current medical records do not report his weight or BMI.  *See* Gov't Mem. at 2.

[3] *See, e.g.*, *United States v. Wilson*, 16 Cr. 317 (PAE), Dkt. 656 at 4–7 (S.D.N.Y. Aug. 31, 2020) (ordering compassionate release of defendant with heightened vulnerability who had served the substantial majority of his sentence and played a low-level role in a drug trafficking conspiracy); *United States v. Simon*, 482 F. Supp. 3d 151, 154–56 (S.D.N.Y. 2020) (ordering compassionate release of elderly defendant who had serious medical conditions and played a low-level role in a drug trafficking conspiracy); *United States v. Davies*, No. 18 Cr. 390 (PAE), Dkt. 479 at 4–7 (S.D.N.Y. June 26, 2020) (ordering compassionate release of elderly defendant who had serious medical conditions and played low-level role in drug trafficking conspiracy); *United States v. Brown*, No. 18 Cr. 390 (PAE), Dkt. 472 at 4–7 (S.D.N.Y. June 17, 2020) (same); *United States v. Jasper*, No. 18 Cr. 390 (PAE), Dkt. 441 at 2–4 (S.D.N.Y. Apr. 6, 2020) (ordering compassionate

applications where the defendant had not shown heightened vulnerability, or where release at the time of the request would come too early in the service of the sentence imposed to make the term served consistent with the § 3553(a) factors.

Romero's case presents a somewhat different paradigm.  It is factually disputed whether he is today more vulnerable to COVID-19 than other inmates.  His medical records at the time of his previous application did not so show.  And Romero's claim that he today has become obese, while possibly true, has not been corroborated.

However, the Court's judgment is that Romero's renewed application for release is meritorious for a different reason.  He has now served all but four months of the 69 months in prison that he is projected to serve, taking into account good-time credit.  And as of today, he has served 13 months in prison in the challenging and no doubt harrowing conditions presented by COVID-19, conditions that demonstrably persist in his facility.[4]

Under these circumstances, it is easy to conclude that exceptional circumstances justify Romero's release.  The pandemic has subjected Romero to far more restrictive conditions of confinement, and has prompted limits on access to visitors, including family, far beyond what the Court expected at sentencing.  The virus's wide incursion into the facility in which Romero is held has also assuredly made the past 13 months at FCI Schuylkill especially fearful and fraught.

---

release of defendant with an immune-inflammatory disease who had served all but 34 days of a four-month sentence).

[4] *See* Timothy Williams, et al., *'Jails Are Petri Dishes': Inmates Freed as the Virus Spreads Behind Bars*, N.Y. Times (May 20, 2020), https://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html; *see also United States v. Nkanga*, 450 F. Supp. 3d 491, 492 (S.D.N.Y. 2020) (citing *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Ctrs. for Disease Control & Prevention 2 (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf) (highlighting danger faced by those in jails and prisons).

Both in imposing sentences during the pandemic and in considering applications for compassionate release, this Court has repeatedly recognized that a day spent in prison custody in exceptionally arduous conditions is properly viewed as equivalent to more than a day in ordinary custody.

Indeed, long before the current pandemic, courts had recognized that periods of pre-sentence custody spent in unusually hard conditions merited recognition by courts in measuring the just sentence.  *See, e.g.*, *United States v. Carty*, 264 F.3d 191, 196–97 (2d Cir. 2001) (holding that that "pre-sentence confinement conditions may in appropriate cases be a permissible basis for downward departures," and vacating and remanding the defendant's sentence "so that the district court [could] reconsider the defendant's request for a downward departure, and do so in the light of this holding"); *United States v. Sanpedro*, 352 F. App'x 482, 486 (2d Cir. 2009) (summary order) ("In imposing the sentence it did, the district court considered . . . [among other factors,] the harsh conditions of [the defendant's] confinement at Combita," in Columbia where he was detained before being extradited to the United States.); *United States v. Salvador*, No. 98 Cr. 484 (LMM), 2006 WL 2034637, at *4 (S.D.N.Y. July 19, 2006) (holding that the defendant's pre-sentence conditions while "incarcerated in the Dominican Republic, awaiting extradition to the United States . . . warrant a downward departure"); *United States v. Torres*, No. 01 Cr. 1078 (LMM), 2005 WL 2087818, at *2 (S.D.N.Y. Aug. 30, 2005) ("depart[ing] downward, by 1 level, because of the harsh conditions of defendant's pretrial detention").  The same logic applies to Romero's period of custody during the pandemic.  A day spent in prison under extreme lockdown and in fear of contracting a deadly virus exacts a price on a prisoner beyond that imposed by an ordinary day in prison.  Although not intended as punishment, incarceration in such conditions is, unavoidably, more punishing.  *See United States v. Rodriguez*, No. 00 Cr. 761

(JSR), 2020 WL 5810161, at *3 (S.D.N.Y. Sept. 30, 2020) ("The pandemic, aside from posing a threat to [a defendant's] health, has made [a defendant's] incarceration harsher and more punitive than would otherwise have been the case.  This is because the federal prisons, as 'prime candidates' for the spread of the virus, have had to impose onerous lockdowns and restrictions that have made the incarceration of prisoners far harsher than normal."); *United States v. Salemo*, No. 11 Cr. 65 (JSR), 2020 WL 2521555, at *3 (S.D.N.Y. May 17, 2020) ("BOP has taken a number of steps to mitigate the spread of the virus in federal prisons . . . [including] restrictions on visitors, restrictions on gatherings . . . [and] lockdowns lasting at least 14 days").

The presence of extraordinary and compelling reasons for early release, however, is only a threshold prerequisite for granting such release.  The Court must also assure itself that release accords with "the factors set forth in section 3553(a) to the extent that they are applicable" before doing so.  18 U.S.C. § 3852(c)(1)(A).  At the time of Romero's first application for compassionate release in May 2020, some 11 months ago, these factors disfavored early release. Romero had considerably more of his assigned sentence yet to serve, and he had served just two months in custody during the pandemic.  *See* Op. & Order at 3.  But today, with just four months to go until his scheduled release date, and with Romero having spent nearly an additional year incarcerated in a prison where COVID-19 is not an abstract concern but a persistent presence, the § 3553(a) factors are consistent with the modest expedition (by four months) of Romero's release date that his renewed motion seeks.

In imposing sentence originally, the Court found several § 3553(a) factors to favor the assigned 78-month sentence: to ensure that the sentence reflected the seriousness of Romero's offense and promoted respect for the law, to achieve general and specific deterrence, and to protect the public.  *See* Sent. Tr. at 44–50.  Today, those factors remain as weighty as before.

8

But the unexpected arduousness of Romero's time in custody has made the reduced term that he

seeks consistent, too, with those factors.  Considering good time credit, Romero has served well

over 90% of his likely sentence.  The Court's judgment is that the 13 months Romero has spent

in prison during COVID-19 offsets the need, to assure just punishment, for him to serve the

remaining few months of his sentence in prison.  His case thus tracks many others during this

extraordinary time in which the Court has granted compassionate release to defendants who had

served the majority of their carceral sentences.[5]  That is especially so given the Court's intent to

require, as a condition of supervised release that will immediately follow Romero's release, that

he spend his first four months after release in home detention, as he is currently eligible to do.

Romero's early release is also compatible with the § 3553(a) interests in general and

specific deterrence and the protection of the public.  The nearly five-and-a-half years that

Romero has served in federal custody, including under the harsh conditions of the last 13

months, should suffice to deter him from further criminality, or to give pause to others who

might emulate his conduct.  *See* Sent. Tr. at 47–49 (noting need for a long sentence to achieve

deterrence).  And although, as the Government notes, Romero engaged in violence as a member

of 18 Park, Gov't Mem. at 2, Romero was not a leader of the gang, and does not have a criminal

---

[5] *See, e.g.*, *United States v. Ciprian*, No. 11 Cr. 1032 (PAE), Dkt. 2581 (S.D.N.Y. Feb. 1, 2021); *United States v. Lizardi*, No. 11 Cr. 1032 (PAE), Dkt. 2532 (S.D.N.Y. Oct. 9, 2020) (ordering compassionate release of defendant who had served 93 months of a 121-month sentence and was scheduled to be released in 11 months and to a halfway house in five months); *United States v. Benjamin*, No. 15 Cr. 445 (PAE), Dkt. 1144 at 6–7 (S.D.N.Y. Sept. 15, 2020) (same for defendant with asthma and had served nine years of his 10-year sentence); *United States v. Knox*, No. 15 Cr. 445 (PAE), Dkt. 1088 (S.D.N.Y. Apr. 10, 2020) (same for defendant who had served all but seven months of an 88-month sentence); *Jasper*, No. 18 Cr. 390 (PAE), Dkt. 441 at 2–4 (ordering compassionate release of defendant with an immune-inflammatory disease who had served all but 34 days of a four-month sentence); *Hernandez*, 451 F. Supp. 3d 301 at 305 (same for defendant with asthma and had served 17 months of a 24-month sentence and was scheduled for release in four months).

record outside of the gang.  Sent. Tr. at 51.  His personal drug dealing was limited to marijuana.

*Id.*  The Court noted at sentencing that Romero had shown signs that he was already "in the

process of growing up," *id.* at 59, and the Court is encouraged by Romero's pursuit and

attainment of a GED while incarcerated and his commitment to seek mental health counseling,

*see* Def. Mem. at 5.  Finally, as to public protection, given the modest nature of the sentencing

reduction sought, the Court does not view any incremental risk to the public arising from

Romero's release today, rather than four months from now, as significant.[6]

Finally, two § 3553(a) factors favor release more strongly today than at the time of

sentencing.  The Court under § 3553(a)(1) and (2)(D) is to consider the "history and

characteristics of the defendant" and the need "to provide the defendant with needed . . . medical

care."  That history now includes the significantly mitigating fact of 13 months of incarceration

during a once-in-a-century pandemic and the present risk of Romero contracting the virus.

The Court thus finds that the § 3553(a) factors, viewed collectively today, are consistent

with expediting Romero's release by four months, as he requests.  Accordingly, the Court grants

Romero's motion for compassionate release from prison under 18 U.S.C. § 3582(c)(1)(A)(i).  The

Court will direct that Romero, as a condition of supervised release, spend the first four months on

home detention in the home of his mother, Diana Romero, who no longer lives in the Bronx, where

---

[6] The Government notes that Romero's disciplinary record in prison reflects an incident in 2019 for possessing an unspecified "hazardous tool."  Gov't Ltr.  This incident weighs against early release.  But this possessory infraction did not involve violence.  It is not sufficient to offset the factors favoring modestly expediting Romero's release.  The Court, however, reminds Romero that, if any violation of the conditions of supervised release is established, this Court would be responsible for sentencing him.  The Court would regard any such violation—and particularly one involving a violation of law or entailing violence—as a grave breach of the trust the Court is today putting in him.  It would almost certainly guarantee his immediate remand and imposition of a meaningful new prison term as punishment for that breach.

18 Park was active.  To assure time to implement this order, the Court orders Romero's release on April 22, 2021. The Court directs that the Government and defense, in consultation with the Probation Department, submit to the Court, by April 20, 2021, an agreed-upon order setting out the terms of Romero's conditions of home confinement.

      SO ORDERED.

                                    _____
                                        PAUL A. ENGELMAYER
                                        United States District Judge

Dated:  April 16, 2021
        New York, New York